1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONALD LOUIS ZACKERY,

11           Plaintiff,                    No. CIV S-05-2315 MCE DAD P

12      vs.

13   STOCKTON POLICE DEP'T, et al.,

14           Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16           Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is a motion for summary judgment, or in the alternative,

18   motion for summary adjudication (MSJ) brought on behalf of defendants Kevin Hachler,

19   Theodore Snyder, Jonathan Beard, and Brian Breckenridge.[1]  All of the defendants are officers

20   with the Stockton Police Department.

21                    PLAINTIFF'S AMENDED COMPLAINT

22           This action is proceeding on plaintiff's amended complaint, filed on December

23   27, 2005, in which he contends that on September 2, 2004, his vehicle was stopped by police at

24

25        [1]  Defendants indicate that in his amended complaint plaintiff misspelled and/or misstated
     their names.  They note that Theodore Snyder was erroneously sued as Theoure Snyder, Jonathan
     Beard was erroneously sued as Harrison Beard, and Brian Breckenridge was erroneously sued as
26   Edward Breckenridge.

                                              1

the intersection of California and Magnolia Streets.  According to plaintiff, defendant Snyder opened his car door, grabbed plaintiff around the neck and threw him to the ground.  Officer Hachler then put his knee on plaintiff's back while defendant Snyder was handcuffing plaintiff. Defendant Breckenridge used his taser on plaintiff and defendant Beard released his K-9 dog to attack plaintiff resulting in multiple dog bites being inflicted on plaintiff's left leg and thigh. Plaintiff alleges that he asked defendant Hachler and Snyder for medical treatment and they responded that plaintiff needed to wait until his pre-booking was completed.  Plaintiff contends that he had to wait two hours before he was taken to the hospital and another four hours at the hospital before he was examined by a doctor.  Plaintiff claims that defendants used excessive force in arresting him.  The court has also construed plaintiff's amended complaint as stating a claim that the defendants deprived him of adequate medical care in violation of his rights under the Eighth Amendment.

PARTIES' ARGUMENTS

I. Defendants' Motion for Summary Judgment

    A. Statement of Facts[2]

On September 2, 2004, at approximately 6:02 p.m., police officers Guerrero and Harris received a call regarding a disturbance involving plaintiff and Katrina Bryant, whom plaintiff was threatening.  A description of plaintiff's car and the license plate number was provided.  Officer Guerrero was driving in the vicinity, observed plaintiff's vehicle and activated the emergency red and blue lights in an attempt to make a traffic stop.  Plaintiff failed to yield and when the emergency sirens were activated, plaintiff accelerated, ran a red light, passed several cars by driving on the shoulder of the road, ran two more red lights, and continued to drive at a high rate of speed.  The officers were ordered to terminate the pursuit for safety reasons due to the conditions of the road and the speeds of the vehicles.

---

[2] This summary is set forth in defendants' Motion for Summary Judgment, Memorandum of Points and Authorities (court document number 38 at 7-14).

1    At approximately 6:15 p.m., officers Ridenour and Gutierrez were in their vehicle

2    when they observed plaintiff's vehicle doing "donuts" in the intersection of Airport Way and

3    Acacia Street while traffic on Airport Way was very heavy.  (MSJ, Gutierrez Decl., at 1-2.)  The

4    officers tried to catch up with plaintiff's vehicle but were unable to find him.

5    At approximately 6:16 p.m., defendants Hachler and Snyder were stopped at a red

6    light when they observed plaintiff's car.  Plaintiff drove up on the sidewalk, ran a red light, and

7    continued driving.  (MSJ, Hachler Decl., at 1-2.)  Officers Hackler and Snyder activated the

8    lights and siren, but plaintiff failed to stop and continued to drive at a high rate of speed,

9    disregarding the safety of others.  (Id. at 2.)  Finally, plaintiff drove in the wrong direction against

10   traffic, around a vehicle, through a red light and onto the grounds of Stanislaus State University.

11   (Id.)  The watch commander ordered the pursuit terminated and the lights and siren were turned

12   off while the officers followed plaintiff through the campus at a slow rate of speed.  (Id.)

13   Plaintiff continued to run red lights and stop signs and finally turned into a dead end section of

14   the campus.  (Id.)  Defendants Hachler and Snyder stopped the patrol car and waited.  Plaintiff

15   made a u-turn and as he approached the patrol vehicle, it appeared that he was pulling over to

16   stop.  (Id.)  When defendant Hachler exited his vehicle to take plaintiff into custody, plaintiff

17   accelerated his vehicle, swerved and drove directly at defendant Hachler.  (Id. at 3.)  Defendant

18   Hachler had to run out of the way to avoid being hit as plaintiff drove away at a speed exceeding

19   forty miles per hour.  (Id.)  Defendant Hachler observed plaintiff drive onto the sidewalk and a

20   lawn to go around two patrol units blocking the entrance/exit.  (Id.)  As plaintiff attempted to

21   turn onto the street, he lost control of his vehicle and crashed into a tree.  (Id.)  Defendant

22   Hachler observed plaintiff get out of the car and attempt to flee.  (Id.)  Defendant Beard saw

23   plaintiff take off his seatbelt, open the car door, get out and begin to flee on foot.  (MSJ, Beard

24   Decl. at 2.)  Defendant Beard deployed his canine, Rony, to detain plaintiff who was bitten on his

25   lower left leg.  (Id.)  Defendant Beard described what followed:

26   /////

3

1

2

3

4

> At this point, I ran up to Zackery, grabbed his upper body, and ordered him to get onto the ground. He refused my commands so I pulled him forward. By pulling him forward, and Rony assisting, I was able to get Zackery to the ground. While I was pulling Zackery to the ground, Rony moved out of the way releasing his grasp and then re-engaged the suspect on the same left leg. In total, Rony bit Zackery two times.

5   (Id.)  Even after plaintiff was lying on the ground, he continued to resist attempts to handcuff

6   him by keeping his hands under his chest. (MSJ, Hachler Decl. at 3 & Beard Decl. at 3.)

7   Defendant Breckenridge used his taser on plaintiff's lower back in an attempt to get him under

8   control. (MSJ, Breckenridge Decl. at 2.)  Defendant Beard ordered the canine to release plaintiff,

9   which he did. (MSJ, Beard Decl. at 3.)  Because plaintiff continued to resist the officers he was

10  tased a second time. (MSJ, Breckenridge Decl. at 3.)  At that point, plaintiff said very calmly,

11  "Okay, I give." (MSJ, Beard Decl. at 3.)  Plaintiff pulled his hands out from under his body and

12  put them behind his back to be handcuffed. (Id.)

13         Defendant Hachler observed that plaintiff's speech was slurred and that his eyes

14  were red and watery. (MSJ, Hachler Decl. at 4.)  Defendant Hachler also smelled alcohol and

15  advised the DUI unit that plaintiff may be under the influence of an alcoholic beverage. (Id.)

16  Officer Berry obtained breath test samples with plaintiff's consent. (MSJ, Berry Decl. at 2.)  At

17  7:05 p.m., the sample indicated a blood alcohol concentration of 1.2 percent. (Id.)  At 7:09 p.m.,

18  the second sample resulted in a blood alcohol concentration of 1.1 percent. (Id.)  The legal limit

19  in California is 0.08 percent. (Id.)

20         Defendants Hachler and Snyder transported plaintiff to the police station to be

21  processed. (MSJ, Hachler Decl. at 4.)  Defendant Hachler asked plaintiff if he needed any

22  medical attention. (Id.)  Plaintiff responded, "No." (Id.)  Nevertheless, because plaintiff had

23  been in a collision, had dog bites and had been tased, it was department policy to have him

24  medically cleared prior to booking. (Id.)  At 7:45 p.m., defendant Snyder and Hachler

25  transported plaintiff to the County Hospital where later he was medically cleared. (Id. at 5.)  At

26  10:50 p.m., plaintiff was transported to the County Jail for booking. (Id.)  Plaintiff was booked

1   on the following charges:  felony assault on a police officer (Penal Code § 245(c)[3]); evading a

2   police officer with reckless disregard (Vehicle Code §2800.2); reckless driving (Vehicle Code §

3   23103(a)); drunk driving (Vehicle Code § 23152(a) and (b)); felony vandalism (Penal Code §

4   594(b)(1)); resisting or obstructing a police officer (Penal Code § 148(a)(1)); unlicensed and no

5   insurance/expired registration (Vehicle Code §§12500(a), 16028(c), 4000(a)); and violation of

6   parole (Penal Code § 3056).

7           In support of their motion for summary judgment, defendants have submitted the

8   declaration of James Faggiano, a self-employed instructor to five San Francisco Bay Area police

9   departments who selects and trains police service and narcotic detection dogs.  (MSJ, Faggiano

10  Decl., at 1.)  Faggiano provides extensive training to police K-9 handlers and has 36 years of

11  experience as an instructor.  (Id. at 2.)  He reviewed the officers' declarations regarding the

12  September 2, 2004 incident, the police reports, Lieutenant Ballard's interview with plaintiff, and

13  the City of Stockton use of force policy and canine unit general order.  (Id.)  Mr. Faggiano's

14  opinion is that the use of the canine on September 2, 2004 was reasonable and within generally

15  accepted police K-9 practices.  (Id.)

16          Defendants also submit portions of the transcript of Lieutenant Ballard's

17  interview of plaintiff conducted on October 27, 2004 at the San Joaquin County Jail as part of the

18  investigation into plaintiff's citizens complaint regarding his arrest.  In that interview, plaintiff

19  admitted that about an hour before his arrest he had been drinking and that earlier that morning,

20  he had received a morphine shot for a tooth extraction.  (MSJ, Ballard Decl., Ex. A at 17-18.)

21  Plaintiff had also taken penicillin and Prozac despite consuming alcohol.  (Id. at 19.)  Plaintiff

22  stated that when he was pursued by the police, he believed that he was being chased by

23  spaceships because of the blue and red lights.  (Id. at 22-25.)  Plaintiff admitted that he had never

24  before experienced that type of confused mental state, that he was talking to himself, hearing

25

26          [3]  The referenced code sections are California statutes.

5

voices, and had lapses of memory loss.  (<u>Id.</u> at 47-49, 51.)  Despite this confused mental state,

plaintiff insisted that he never resisted the officers. (<u>Id.</u> at 51.)  When plaintiff was taken to the

police department, pictures were taken and a breathalyzer test was administered before plaintiff

was taken to the hospital.  Plaintiff was uncertain of how long he was at the police station,

stating, "this was about two hours uh, two hours be-, uh, was it a hour?  Maybe, well, maybe 45

minutes or maybe something like that."  (<u>Id.</u> at 59.)  As to how he was treated by the officers,

plaintiff stated in his interview as follows:

> Like I said, everything was pretty consistent, you know, after the
> incident was over, you know.  And I felt, you know, because I had,
> I think I had mentioned to one of the officers who took me to the
> hospital, "Man, why did the dog bite me that many times?"  Or
> something like that, something.  I don't remember.  But that's not
> important.  But like I said, everything happened pretty consistent,
> you know.  They was nice about it, and I was, you know, already
> calm, cool, you know.

(<u>Id.</u> at 60.)

B. <u>Defendants' Arguments</u>

Defendants contend that they did not violate plaintiff's Fourth Amendment rights.

Defendants argue that their use of force during the arrest was reasonable because plaintiff's

erratic and reckless driving demonstrated that he would do anything to escape, including fleeing

the scene on foot. (MSJ, P.&A. at 14-15.)  Defendant Beard deployed his dog only after plaintiff

failed to get down on the ground as instructed.  (<u>Id.</u> at 15.)  Once on the ground, plaintiff

continued to resist and struggle with the officers.  (<u>Id.</u>)  Plaintiff kept his hands under his chest so

he could not be handcuffed.  (<u>Id.</u>)  Defendants also note that plaintiff has admitted that prior to

his arrest, he had consumed alcohol, was on Morphine for his dental treatment, had taken

psychiatric medication which was not to be mixed with alcohol, and  was delusional.  (<u>Id.</u>)

Plaintiff continued to resist the officers until he was tased.  (<u>Id.</u> at 16.)

In the alternative, defendants argue that they are entitled to qualified immunity.

(<u>Id.</u>)  In this regard, they contend that the use of the canine was proper pursuant to department

1  policy and City of Stockton's General Order No. Y-2, § 1.A, which allows use of a police canine

2  to apprehend a fleeing suspect.  (Id. at 18.)  In addition, defendants argue that the canine used in

3  connection with plaintiff's arrest, was certified and properly trained.  (Id.)

4        Defendants also argue that they are entitled to qualified immunity because the

5  force they used in effecting plaintiff's arrest was reasonable.  (Id. at 24.)  They note that plaintiff

6  had attempted to run over Officer Hachler, was driving in a reckless manner in total disregard for

7  the public's safety, had evaded the police, and clearly was willing to do anything to avoid

8  apprehension.  (Id. at 23.)  Defendants also point to the following facts established by the

9  evidence submitted in support of their qualified immunity argument: (1) after plaintiff crashed

10  his car, he attempted to flee on foot and continued to fight, not only the dog, but with officers; (2)

11  even though he was taken down to the ground, plaintiff, who is six feet and one inch tall and

12  weighs 250 pounds, continued to resist; (3) Officer Breckenridge tased plaintiff initially with the

13  probes and when this had no effect and plaintiff continued to resist and obstruct the officers by

14  holding his hands under his chest, Officer Breckenridge tased plaintiff using the contact mode;

15  and (4) only at that point did plaintiff calmly state, "Okay I give."  (Id. at 23-24) (quoting MSJ,

16  Breckenridge Decl. at 2.)  Defendants argue that under these circumstances they would have

17  reasonably believed that the force used was no more than that required to safely take plaintiff into

18  custody.  (P.&A. at 24.)  Therefore, defendants contend they are entitled to qualified immunity.

19        As to plaintiff's medical care claim, defendants argue that once plaintiff was at the

20  hospital, the officers had no control over the length of time it took hospital staff to treat him.  (Id.

21  at 22.)  In addition, defendants note that when plaintiff was interviewed on October 27, 2004, he

22  did not complain about his medical treatment.  (Id. at 22-23.)

23  III.  Plaintiff's Opposition

24        In his opposition to defendants' motion for summary judgment, plaintiff asserts

25  that he is entitled to summary judgment as a matter of law because: "(1) plaintiff suffered injury

26  and violation of his Constitutional right to be free from cruel and unusual punishment and Equal

1   Protection of the law with due process; (2) all named defendants are not entitled to qualified

2   immunity for their actions, and (3) plaintiff has established that the defendants deprived him of

3   medical care.  (Opp'n at 1-2.)

4           Plaintiff also contends without explanation that defendants have failed to comply

5   with the court's June 7, 2007 order requiring them to produce "redacted versions of citizen

6   complaints" filed against the defendants which involved claims of excessive use of force during

7   the past five years.  (Order, filed 6/7/07, at 9.)  He requests that the court issue an order

8   compelling further production of documents.  (Opp'n at 4.)

9           Plaintiff argues that a number of material issues are in dispute.  First, plaintiff

10  contends that, contrary to defendants' statement that plaintiff was resisting, he was not in fact

11  arrested for or charged with resisting arrest.  (Id.)  Likewise, in his declaration, plaintiff asserts

12  that he was "beaten even though I did not resist in any way."  (Pl.'s Decl. at 1.)  Second, plaintiff

13  contends that the following is disputed:

14              2.  The Defendants stated:  "A review of City of Stockton General
                Order No. 4-2. . .In Section 6.C(2)" states . . . . to halt the suspect
15              and that a bite may occur."  (Emphasis in original.)

16  (Opp'n at 4.)[4]  Next, plaintiff disputes the extent of his injuries, asserting that he had over

17  twenty-five puncture wounds resulting from the use of the canine and was not bitten just once.

18  (Opp'n at 4-5; Pl.'s Decl. at 1.)  Plaintiff also contends that the taser hook had to be removed

19  from his lower back.  (Opp'n at 5.)  Plaintiff has attached to his opposition medical records from

20  San Joaquin General Hospital Emergency Department and photographs of his injuries.  (Id., Ex.s

21  B & E.)

22          Plaintiff argues that defendants violated his civil rights and used excessive force.

23  As a result of defendants' use of force, plaintiff contends that he suffered [c]hest pains, weakness

24  etc."  (Id. at 5.)  He also has attached to his opposition a copy of his own citizen complaint in

25  _____

26      [4]  Plaintiff provides no further clarification or argument as to what about the General
    Order is disputed.

1   which he alleged that officers used "brutality and excessive force[,]" and that while he was on the

2   ground and handcuffed, the taser was used and the K-9 was deployed.  (Id., Ex. D.)  Plaintiff also

3   submits a copy of a citizen complaint made by a Brandon DeLove Lee concerning an incident

4   with an officer "Hackler[5]" on May 25, 2005.  In his complaint Mr. Lee stated as follows:

> They did not read me any right.  They also did not tell me what I
> was under arrest for.  They tried to pull me out the car with my seat
> belt on twisting my rist [sic] & pulling at the same time.  They did
> not have to slam me up against the gate and push my arms up to
> the back of my neck.

8   (Id.)  Plaintiff contends, based upon this evidence, that defendant "Hackler" was known for using

9   excessive force.  (Id. at 5.)

10          Plaintiff argues that there is a genuine dispute of a material fact as evidenced by

11  his exhibits and that summary judgment should be denied.  (Id. at 6.)  Plaintiff also asserts that

12  defendants are not entitled to qualified immunity.  (Id. at 6-7.)

13  IV.  Defendants' Reply

14          Defendants contend that plaintiff has failed to raise a genuine issue of material

15  fact sufficient to defeat their motion for summary judgment.  As to plaintiff's claims of cruel and

16  unusual punishment and violation of his rights to equal protection and due process, defendants

17  point out that such claims are not included in plaintiff's amended complaint.  In addition,

18  defendants argue that the Eighth Amendment prohibition on cruel and unusual punishment does

19  not apply here because plaintiff was not incarcerated at the time and plaintiff's assertion of

20  violation of his rights to equal protection and due process are vague.

21          Defendants also argue that plaintiff has failed to provide any evidence to support

22  his claim that his medical treatment was delayed and that his suffered major medical injuries.

23  According to plaintiff's medical records, when he was triaged at the hospital, his injuries were

24  /////

25

26          [5] Mr. Lee identifies the officer involved as "Hackler" and plaintiff presumes that this
    citizen complaint concerned defendant Hachler.

1   deemed non-urgent.  (Reply, Green Decl., Ex. 1 at 16.)  In this vein, defendants note that the

2   attending physician made the following diagnosis:

> pt has tazer hook on left lower back, removed manually.  pt has
> multiple puncture wound on left lower legs  26 marks left upper leg
> & buttock 12 mark. [no][6] evidence of deep laceration . . .  will
> discharge back to police.

6   (Id., Ex. 1 at 18.)  Defendants contend that the evidence demonstrates that plaintiff's injuries

7   were superficial, did not require stitches, and that plaintiff was medically cleared for release to

8   police custody.  (Reply at 5-6.)  As to plaintiff's claim that there was a delay in his treatment,

9   defendants contend that when plaintiff was taken to the police department, he was asked if he

10  needed medical care and plaintiff said no.  (Reply at 5; MSJ, Hachler Decl. at 4.)  Defendants

11  also argue that there was only about a one hour delay between the time plaintiff was arrested and

12  when he was triaged at the hospital.  (Reply at 5.)  They contend that plaintiff's blood alcohol test

13  was conducted at 1909 hours following his was arrested and he was triaged at the hospital by

14  2010 hours.  (Id.; MSJ, Berry Decl. at 2.)  As for any delay in treatment once plaintiff was at the

15  hospital, defendants argue that they had no control over this situation.  (Reply at 5.)

16          With respect to plaintiff's contention that he suffered "chest pains and weakness,"

17  defendants argue that plaintiff was treated for this condition on October 4, 2004, and there is

18  nothing in the record indicating that these symptoms are related to the incident at issue in this

19  case.  (Reply at 6.)

20          Finally, defendants challenge plaintiff's assertion that there are issues of material

21  fact in dispute.  They argue that plaintiff has completely failed to address the evidence

22  establishing that he was in a seriously confused mental state at the time of his arrest.[7]

---

[6]  The physician used the symbol for "no" which is a zero with a line drawn through it.

[7]  Defendants also contend that, contrary to plaintiff's bald claim, they complied with the
court's June 7, 2007 order and provided the discovery documents as ordered by the court.
(Reply at 8.)

1          <u>SUMMARY JUDGMENT STANDARDS UNDER RULE 56</u>

2          Summary judgment is appropriate when it is demonstrated that there exists "no

3 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4 matter of law."  Fed. R. Civ. P. 56(c).

5          Under summary judgment practice, the moving party

6     always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the

7     pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes

8     demonstrate the absence of a genuine issue of material fact.

9 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12 to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered,

13 after adequate time for discovery and upon motion, against a party who fails to make a showing

14 sufficient to establish the existence of an element essential to that party's case, and on which that

15 party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof

16 concerning an essential element of the nonmoving party's case necessarily renders all other facts

17 immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

18 whatever is before the district court demonstrates that the standard for entry of summary

19 judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

20          If the moving party meets its initial responsibility, the burden then shifts to the

21 opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

22 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

23 establish the existence of this factual dispute, the opposing party may not rely upon the

24 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25 form of affidavits, and/or admissible discovery material, in support of its contention that the

26 dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

1    On March 2, 2006, the court advised plaintiff of the requirements for opposing a

2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

4    OTHER APPLICABLE LEGAL STANDARDS

5  I.  Civil Rights Act Pursuant to 28 U.S.C. § 1983

6    The Civil Rights Act under which this action was filed provides as follows:

7    Every person who, under color of [state law] . . . subjects, or causes
    to be subjected, any citizen of the United States . . . to the
8    deprivation of any rights, privileges, or immunities secured by the
    Constitution . . . shall be liable to the party injured in an action at
9    law, suit in equity, or other proper proceeding for redress.

10  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

11  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

12  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

13  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

14  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

15  omits to perform an act which he is legally required to do that causes the deprivation of which

16  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17  II.  Excessive Force Claim

18    A claim that a law enforcement officer used excessive force during the course of

19  an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard.

20  Graham v. Connor, 490 U.S. 386, 395 (1989).  This standard requires consideration of (1) the

21  governmental interest at stake, (2) the need for the use of force, and (3) the amount of force used.

22  See id. at 396; see also Scott v. Harris, 127 S. Ct. 1769, 1778 (2007); Santos v. Gates, 287 F.3d

23  846, 853 (9th Cir. 2002); Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001); Liston v.

24  County of Riverside, 120 F.3d 965, 976, 976 (9th Cir. 1997).

25    First, an analysis of the governmental interest at stake requires the balancing of a

26  wide range of factors, including "(1) the severity of the crime at issue, (2) whether the suspect

13

1  pose[d] an immediate threat to the safety of the officers or others . . . (3) whether he [was]

2  actively resisting arrest or attempting to evade arrest by flight, and any other exigent

3  circumstances [that] existed at the time of the arrest."  Deorle, 272 F.3d at 1280 (quoting

4  Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1285 (9th Cir. 2000), vacated and

5  remanded on other grounds, 534 U.S. 801 (2001)).[8]  See also Blankenhorn v. City of Orange, 485

6  F.3d 463, 477 (2007).

7          Second, the court considers whether there was a need for the use of the force that

8  was employed.  It has been explained that the need for the force used is the essence of the

9  Graham objective reasonableness analysis.  Liston, 120 F.3d at 976.  "'The force which was

10  applied must be balanced against the need for that force: it is the need for force which is at the

11  heart of the Graham factors.'"  Id. (quoting Alexander  v. City and County of San Francisco, 29

12  F.3d 1355, 1367 (9th Cir. 1994)).  See also Headwaters Forest Def. v. County of Humboldt, 276

13  F.3d 1125, 1130 (9th Cir. 2002) (applying this same analysis in determining that it was

14  unreasonable to use pepper spray repeatedly on nonviolent, environmental protestors when such

15  force was unnecessary to subdue, remove, or arrest the protestors) (amended opinion).

16          Third, the court considers the amount of force used.  "Force is excessive when it

17  is greater than is reasonable under the circumstances."  Santos, 287 F.3d at 854 (citing Graham,

18  490 U.S. 386).  For non-lethal force, "the degree of force used . . . is permissible only when a

19  strong governmental interest compels the employment of such force."  Deorle, 272 F.3d at 1280.

20  As has been recognized:

21

22          [8] In Deorle, the plaintiff had been shot in the head by police with a lead-filled beanbag,
removing his left eye and lodging pieces of lead shot in his skull.  At the time police were
23  investigating a call of a suspect's "peculiar behavior."  Deorle, 272 F.3d at 1280.  Based on the
objective facts and circumstances of the case, the court determined that it was clear from the
24  suspect's behavior that he was emotionally disturbed, unarmed and not a danger to others, and
that there was no immediate need to subdue him.  Id. at 1282-83.  The court held that it was not
25  enough for an officer to simply state that he feared for his safety or the safety of others; there
must be objective factors to justify such a concern.  Id. at 1281.  The court concluded that under
26  the facts in that case, the governmental interest was not substantial.

Although it is undoubtedly true that police officers are often forced to make split-second judgments, and that therefore not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers is a violation of the Fourth Amendment, it is equally true that even where some force is justified, the amount actually used may be excessive.

Santos, 287 F.3d at 853 (internal quotations and citations omitted).  In determining whether the

force used is excessive it is appropriate to consider whether a warning was given before force

was used.  See Deorle, 272 F.3d at 1285 ("Less than deadly force that may lead to serious injury

may be used only when a strong governmental interest warrants its use, and in such

circumstances should be preceded by a warning, when feasible.")

III.  Medical Care Claim

In Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), the court set forth the legal

requirements for an Eighth Amendment medical care claim.

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In the Ninth Circuit, the test for deliberate indifference consists of two parts. McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. at 1059 (citing Estelle, 429 U.S. at 104, 97 S. Ct. 285).  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Id. at 1060.  This second prong - defendant's response to the need was deliberately indifferent - is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. at 1059 (quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988).  Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983.  Id. (citing Estelle, 429 U.S. at 105, 97 S. Ct. 285).  A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. Id. at 1060.  If

15

1
2

the harm is an "isolated exception" to the defendant's "overall
treatment of the prisoner [it] ordinarily militates against a finding
of deliberate indifference." Id. (citations omitted).

3

ANALYSIS

4        In his amended complaint, plaintiff presented only two claims for relief:  (1) a

5   Fourth Amendment claim alleging the use of excessive force during his arrest, and (2) an Eighth

6   Amendment claim alleging that medical treatment following his arrest was unnecessarily

7   delayed.  The court will not address plaintiff's contentions, first raised in his opposition to the

8   pending motion, that defendants violated his rights to equal protection and due process.

9   Moreover,  plaintiff's relating to the force used to carry out his arrest is properly analyzed under

10   the Fourth Amendment.  Therefore, the court will disregard plaintiff's contention that his Eighth

11   Amendment right to be free from cruel and unusual punishment was violated by the manner of

12   his arrest.

13        One final preliminary issue must be addressed before turning to the merits of the

14   pending motion.  As noted above, plaintiff claims that documents which the court ordered

15   disclosed have not been produced by defendants, thereby hindering plaintiff's ability to oppose

16   defendants' motion for summary judgment.  In this regard, on June 7, 2007, the court ordered

17   counsel for defendants to provide plaintiff with copies of his medical records from the period

18   September 2, 2004 to November 29, 2004, and redacted versions of citizen complaints filed

19   against the defendant officers over the past five years and alleging use of excessive force.  See

20   Order, filed June 7, 2007 at 9.  On June 12, 2007, defendants filed a notice of compliance with

21   that order.  To their reply brief, defendants have attached copies of the documents that were

22   produced to plaintiff including citizen complaints by:  (1) Brandon DeLove Lee concerning May

23   25, 2005 incident involving officer "Hackler"[9], (2) Abdulla Mohsen Mohamed concerning

24   /////

25

26        [9]  Court document number 48, Part 4 at 26.

16

1   February 1, 2005 incident involving officer Robin Harrison[10] who was identified in the citizen's

2   complaint as badge number 1514[11], and (3) plaintiff's own complaint concerning his September

3   2, 2004 arrest.  Plaintiff's bald assertion that defendants failed to produce existing citizen

4   complaints lodged against three defendants is unsupported.  It appears clear from this record that

5   no citizen complaints alleging the excessive use of force were filed against defendant officers

6   Snyder, Beard or Breckenridge for the period in question.  Plaintiff has made no showing to the

7   contrary.  Therefore, no order will issue concerning further discovery.

8          The court will now turn to the question of whether summary judgment should be

9   granted in favor of defendants with respect to plaintiff's excessive use of force claim. As noted,

10  defendants argue that they acted reasonably when their K-9 dog was deployed and bit plaintiff,

11  and when a taser was used to control plaintiff during his arrest.  Plaintiff offers essentially three

12  arguments in opposition.  First, plaintiff argues that he was not resisting arrest because he was

13  never charged with resisting arrest.  Plaintiff's argument in this regard is misguided and

14  unpersuasive.  As defendants have pointed out, plaintiff was arrested for violating California

15  Penal Code § 148(A) which prohibits willfully resisting, delaying or obstructing a peace officer.

16  Second, plaintiff refers to the City of Stockton's general order addressing the use of police dogs.

17  Plaintiff's vague reference to the order provides no basis for opposing the defendants' motion.

18  Third, although not clearly stated, it appears that plaintiff is arguing that he should prevail on his

19  excessive force claim based solely on the evidence establishing that he suffered injuries from the

20  dog bites and use of a taser in connection with his arrest.  Again, plaintiff's argument is

21  unpersuasive.  As set forth above, to establish a Fourth Amendment violation the force applied

22  by the arresting officers must have been objectively unreasonable under the circumstances.

23  /////

24  _____

        [10]  Officer Harrison is not a defendant in this action.

25
        [11]  Court document number 48, Part 4 at 27.  Defendants indicate that this citizen's
26  complaint concerned officer Robin Harrison.  However, she is not a defendant in this action.

1    The undisputed evidence establishes the following facts.  Plaintiff was driving

2  recklessly, running stop lights, and exceeding the speed limit in a manner that posed a serious

3  danger to other drivers and pedestrians.  He failed to stop although he was pursued by police.

4  Plaintiff evaded road blocks and almost hit an officer with his vehicle as he sought to avoid

5  capture.  Plaintiff did not stop until he crashed his car into a tree and even then attempted to flee

6  on foot.  Plaintiff was intoxicated and under the influence of morphine and a psychiatric

7  medication which were mixed with alcohol.  By his own admission, plaintiff was delusional,

8  hearing voices, and was suffering lapses of memory loss.  He thought he was being pursued by

9  space ships.

10    Although plaintiff later alleged in his civil rights and citizen's complaints, that he

11  was tased and subjected to dog bites after he was on the ground and handcuffed, plaintiff has not

12  produced any evidence supporting these allegations in his opposition to the summary judgment

13  motion.  In contrast to plaintiff's bare assertions, defendants Beard, Hachler, Snyder, and

14  Breckenridge, as well as, officer Berry submitted declarations under penalty of perjury stating

15  that the police dog was deployed after plaintiff got out of his car and attempted to flee on foot.

16  (MSJ, Beard Decl. at 2; Hachler Decl. at 3; Snyder Decl. at 3; Breckenridge Decl. at 2; and Berry

17  Decl. at 2.)  Defendant Breckenridge states that defendant Beard yelled at plaintiff warning him

18  to stop or Beard would deploy his canine.  (Id., Breckenridge Decl. at 2.)  The taser was used by

19  defendant Breckenridge when plaintiff was on the ground on his stomach, struggling with officer,

20  and would not comply with defendant Beard's order to put his hands behind his back to be

21  handcuffed.  (Id., Beard Decl. at 3; Hachler Decl. at 4; and Breckenridge Decl. at 2.)  Moreover,

22  plaintiff's recollection regarding the events surrounding his arrest is highly questionable in light

23  of the following exchange during plaintiff's interview by Lieutenant Ballard shortly after the

24  arrest:

25    Q: (BALLARD)  . . . Something happened, because you're telling -
    - when I'm listening to you . . .

26  /////

18

1        A: (ZACKERY)  Yes.

2        Q: (BALLARD)  . . . tell me about it - - I don't remember certain
         parts of this or that . . .
3

4        A: (ZACKERY)  Yeah, that's true.

5        Q: (BALLARD)  . . . and um, and then tell me, you know, I know I
         wouldn't resist - - and I believe that.  I, I truly believe in your
         normal state of mind, you'd be probably one of the easy going guy
6        like me, like you are right now.  You know what I'm saying?

7        A: (ZACKERY)  Uh-huh, sure.

8        Q: (BALLARD)  And I don't know.  I don't know.  It's just uh . . .

9        A: (ZACKERY)  I don't know.  If you, if . . .

10       Q: (BALLARD)  It's hard to , it's hard to understand.

11       A: (ZACKERY)  I know.  Like you, like you said, it's probably
         like, like I never had that experience before in my life, you know.
12       Maybe, you know, because I was intoxicated or whatever, but it's
         highly unlikely, but I never re-, you know . . . Man, this, you know,
13       that's just possible, man.  I don't know.  I don't know.  Maybe like,
         maybe it's possible, man.  I, but I know I just never resisted, man.
14       I just, I just know I didn't, because I was on the ground.  It's
         possible.  Some things I don't remember, but that, I think I
15       would've remembered or whatever, because I would've heard,
         because I was hearing . . .
16
         Q: (BALLARD)  Is that based . . .
17
         A:  (ZACKERY) . . "Get on the ground!  Get on, on the ground!"
18

19   (Id., Ballard Decl., Ex. A at 51.)

20          The court is aware that on summary judgment it is not to weigh the evidence or

21   determine the truth of the matters asserted but must only determine whether there is a genuine

22   issue appropriately resolved by trial.  Summers v. A. Teichert & Son. Inc., 127 F.3d 1150, 1152

23   (9th Cir. 1997).  Nonetheless, in order for any factual dispute to be genuine, there must be

24   enough doubt for a reasonable trier of fact to find for plaintiff in order to defeat defendants'

25   summary judgment motion.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

26   The court finds that plaintiff's declaration fails to establish a genuine issue as to whether he was

1    resisting officers who were attempting to handcuff and control plaintiff.  Plaintiff's argument that

2    defendant Hachler has a history of using excessive force based on the citizens complaint

3    submitted by Brandon DeLove Lee also misses the mark.  There is nothing in the citizen

4    complaint attached to plaintiff's opposition that supports such a conclusion.  Moreover,

5    defendant Hachler was not the canine handler or the officer who used the taser during plaintiff's

6    arrest.  The court concludes that no rationale trier of fact could find that defendants used

7    unreasonable force in apprehending plaintiff.  See Scott, 127 S. Ct. at 1779.  Because plaintiff

8    has failed to carry his burden of establishing the existence of a genuine issue of a material fact,

9    defendants' motion for summary judgment should be granted as to plaintiff's excessive use of

10   force claim.

11          As to plaintiff's Eighth Amendment medical care claim, the court finds that

12   plaintiff has failed to establish that the named defendants were deliberately indifferent to his

13   medical needs by delaying his treatment.  In his opposition to the pending motion plaintiff merely

14   asserts in conclusory fashion that the defendants delayed his medical treatment.  However, during

15   plaintiff's interview by officer Ballard, plaintiff did not indicate that officers intentionally

16   delayed his medical treatment but instead acknowledged that the officers were "nice" to him.

17   (MSJ, Ballard Decl., Ex. A at 60.)  This is consistent with defendants' undisputed evidence

18   establishing that when plaintiff was asked by officers if he needed medical attention, plaintiff

19   replied, no.  The evidence submitted by defendants establishes that despite plaintiff indicating

20   that he was not in need of medical care, the officers nonetheless transported him to the hospital

21   where he arrived in less than an hour of his arrest in the field.  Approximately three hours later,

22   plaintiff was released by hospital medical staff back to the police and was transported to the jail.

23   Plaintiff has failed to demonstrate that defendants were deliberately indifferent to his medical

24   care.  Therefore, defendants are entitled to summary judgment in their favor on plaintiff's Eighth

25   Amendment medical care claim.

26   /////

1       Accordingly, IT IS HEREBY RECOMMENDED that:

2       1.  Defendants' motion for summary judgment, filed on April 5, 2007, be granted;

3   and

4       2.  This action be dismissed.

5       These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: January 2, 2008.

14

15

16  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

17  DAD:4
    zack2315.57

18

19

20

21

22

23

24

25

26